# EXHIBIT A

*In re American Capital, Ltd. Derivative Litigation,*
Case No. 11 -CV - 2424 - PJM (D. Md.)("federal derivative action")
*Pobaz v. Wilkus, et al,* 352690-V (Cir. Md.) ("state derivative action")
March 23, 2012

## SETTLEMENT TERM SHEET

1. This term sheet sets forth all the material deal points associated with the resolution of the above matters. The parties recognize that a formal, final settlement agreement and general release will be drafted and executed by the parties, but the parties concur that all material (with the exception of the amount of plaintiffs' counsels' attorneys fees) settlement deal points are set forth herein.

2. All claims between the parties based upon, related to, or which could have been asserted in connection with the above-referenced litigation will be resolved, released and dismissed, subject to final court approval of the final settlement. The parties will submit the proposed settlement in the federal derivative action for court approval and, upon such final approval, shall dismiss with prejudice all actions.

3. Subject to revision in its sole and exclusive discretion, and consistent with ongoing fiduciary duties of the Board of Directors, in the case of a change in control of American Capital, Ltd. ("Company"), for a period of five years following final court approval of this settlement, the Company will:

a. Establish a Dividend Committee: Should the Board of Directors fail to be comprised of a majority of independent directors, as such term is defined at the time by the rules of the NASDAQ stock exchange, then the Company shall create a Committee known as the Dividend Committee which shall be maintained for so long as a majority does not exist, but in any case need not be maintained for more than five years from the date of creation of the Committee. The purpose, authority and responsibility of the Committee shall be to provide guidance to the Board with regard to the orderly declaration of any then-ongoing dividends of the Company's securities.

The Dividend Committee shall not:

1) Usurp a matter expressly delegated to another committee of the Board;

2) Act on matters that are prohibited by state law or the Company's Certificate of Incorporation; and/or

3) Amend, alter, repeal or take action inconsistent with any resolution of the Board that by its terms prohibits it from being amended, altered, or repealed by action of the Committee.

With respect to its membership and procedures:

1) The Committee shall be comprised of three or more independent members of the

Board, with no member having any daily operational duties at the Company and with independence being measured by the standards of the NASDAQ. The members of the Board will be appointed to serve on the Committee by the vote of the Board of Directors, which shall designate one member of the Committee as Chairman;

2) While the Committee will have regularly scheduled meetings which conform to dividend declaration dates, the Chair may call a special meeting at any time;

3) In the absence of the Chair during any Committee meeting, the Committee may designate an interim Chair;

4) The Committee may act only on the affirmative vote of a majority of members at a meeting or by unanimous written consent;

5) Each Committee member shall have reasonable access to management and shall have unlimited access to the Company's books and records as requested;

6) The Committee shall have the ability to retain its own independent legal and financial advisors, at the Company's expense;

7) The Committee will evaluate its performance relative to the responsibilities set forth in this Charter at least annually and will concurrently review the adequacy of the Charter itself. The results of these evaluations shall be reported to the Board;

8) The Committee shall make any recommendations to the full Board regarding any changes to the Company's dividend policy as needed;

9) The Committee will keep minutes of its meeting and promptly inform the Board of any material issues or concerns;

10) The Committee shall make recommendations to the Board of Directors regarding: (i) policies relating to the payment of dividends by the Company; (ii) policies regarding any modification of the Company's current dividend policy; and (iii) policies regarding the timing of any public disclosure of changes to the Company's dividend policy. The Committee shall meet with the Company's General Counsel at least annually to review and consider making recommendations regarding revising the Company's dividend policies;

11) If the Committee is in existence, the Charter shall be published and maintained on the Company's public website.

b. Director Stock Ownership Requirement: The Company will adopt and maintain a written policy requiring that non-employee directors own shares of the Company's common stock equal in value to the lesser of two times the annual cash Board retainer (which was $100,000 for 2011) or 5,000 shares within three years of joining the Board (of which 2,000

55842455v3

shares should be owned within the first year of joining the Board). The minimum number of shares to be held by non-employee directors will be calculated on the first trading day of each calendar year based on their fair market value. In the event the cash retainer increases, the directors will have five years from the time of the increase to acquire any additional shares needed to meet these guidelines. The Compensation and Corporate Governance Committee may waive or modify these requirements in certain situations, for reasonably good cause shown.

    c. Annual Director Training In Corporate Governance Best Practices: On an annual basis, through its general counsel's office and/or an outside law firm and/or a corporate governance expert consulting firm, the Company will provide training to its directors in current best practices in corporate governance for publicly-traded corporations, with an emphasis on issues relevant to the Company's industry. Factors to be considered in determining the subject matter of the training shall include: recent developments in corporate governance law, internal controls, fiduciary duties, disclosure requirements, and dividends.

    d. Forfeiture of Certain Bonuses and Profits: Subject to exemption by the Securities and Exchange Commission ("Commission") in particular instances, if the Company is required to prepare an accounting restatement due to the material noncompliance of the Company, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the Company shall reimburse the Company for --

    i. any bonus or other incentive-based or equity-based compensation received by that person from the Company during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

    ii. any profits realized from the sale of securities of the Company during that 12-month period.

    4. Confirmatory Discovery: Defendants will provide to counsel for the Plaintiffs such reasonable documentary confirmatory discovery as is reasonably necessary for the Plaintiffs to confirm the fairness, reasonableness and adequacy of the Settlement and the parties will attempt in good faith to complete such discovery within a reasonable period of time not to exceed 60 days from the date of this term sheet's execution. If, after conducting such discovery, counsel for the Plaintiffs, or any of them, conclude that the Settlement is not fair, reasonable and adequate, they shall so inform counsel for Defendants in writing within a reasonable time period and at that point the Settlement will be void.

    5. Attorneys' Fees and Costs: Defendants, through their insurers, will pay Plaintiffs' reasonable attorneys' fees in this matter. The parties will negotiate in good faith to attempt to reach agreement concerning the amount of attorneys' fees to be paid. The distribution of fees among Plaintiffs' counsel is not of concern to defendants and any dispute among Plaintiffs' counsel as to the proper distribution shall not in any way implicate defendants or increase the amount to be paid by or on behalf of defendants. This settlement will not be contingent on an agreement as to the amount of any such fee.

6. Costs of Notice: Defendants or their insurers shall pay for reasonable costs of providing reasonable notice of the settlement, in the form and manner approved by the Court.

7. Settlement Documentation: The final settlement documentation will be drafted, finalized, executed and filed in the federal derivative action within 30 days of the date of this term sheet's execution.

8. ADR: If any disputes arise out of the finalization of the settlement documentation or the settlement itself, including the amount of attorneys' fees paid to plaintiffs' counsel, those disputes will be resolved by Layn R. Phillips first by way of expedited telephonic mediation and, if unsuccessful, then by way of final, binding, non-appealable resolution, with all fees of the mediator to be split equally between Defendants or their insurance carrier and plaintiffs or their counsel, other than fees of the mediator associated with any dispute among plaintiffs' counsel as to the distribution of fees amongst themselves, which fees of the mediator shall be borne exclusively by plaintiffs' counsel and not by Defendants or their insurance carrier.

9. Mutual Releases and Dismissal: In connection with the execution of the above-referenced settlement documentation, the parties will also execute mutually agreeable general releases and dismissals with prejudice of all claims that were advanced or that could have been advanced in the above-referenced litigation.

10. Publicity: With respect to any press or public statements, the parties agree that words to the following effect will be utilized to describe the resolution: the matter was resolved to both sides' mutual satisfaction with no admissions of liability.

11. No admission: Any settlement will include an agreement that there is no admission by either side concerning liability or the strength of its case.

_____
Frank Bottini
For Plaintiff

_____
Kip Shuman
For Plaintiff

_____
Nicholas Porritt
For Plaintiff

_____
John Massaro
For Defendants

_[signature]_ 3-23-2012
_____
Frank Bottini
For Plaintiff

_[signature]_ IREG 3/26/12
_____
Kip Shuman
For Plaintiff


_____
Nicholas Porritt
For Plaintiff


_____
John Massaro
For Defendants

_____
Frank Bottini
For Plaintiff


_____
Kip Shuman
For Plaintiff

*/s/ Nicholas Porritt*
_____
Nicholas Porritt
For Plaintiff


_____
John Massaro
For Defendants

_____
Frank Bottini
For Plaintiff


_____
Kip Shuman
For Plaintiff


_____
Nicholas Porritt
For Plaintiff

*/s/ John C. Massaro*
_____
John Massaro
For Defendants