THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| *IN RE* **AMERICAN CAPITAL SHAREHOLDER DERIVATIVE LITIGATION** | * Civ. No. 11-2424 PJM (Lead Case)<br>* Civ. No. 11-2428 PJM/AW<br>* Civ. No. 11-2459 PJM<br>* Civ. No. 11-2459 RWT |

## MEMORANDUM OPINION

The parties in this consolidated shareholder derivative litigation involving American Capital, Ltd., ("American Capital") have submitted to the Court a Notice and Motion for Preliminary Approval of Derivative Settlement (Paper No. 38). The Court previously **GRANTED** the Motion, and preliminarily approved the Proposed Settlement Agreement (Paper No. 45). This Opinion elaborates upon the reasons for the Court's approval.

I.

Maria Saenz Briones and Louis Britt sued the Board of Directors of American Capital for breach of fiduciary duty and unjust enrichment. The Consolidated Verified Shareholder Derivative Complaint accuses the Board of "affirmatively, expressly, and repeatedly" misrepresenting American Capital's ability to pay dividends, which Plaintiffs claim was the "*raison d'etre*" for the company's existence. As the Board continued to assure investors of American Capital's ability to pay its dividends, the company's share price rose, which Plaintiffs claim triggered multiple rounds of stock sales by various members of the Board. American Capital, it turned out, could not pay some of its dividends; and when the truth came out, the share price plummeted, causing substantial losses to the company and its shareholders. Certain members of the Board, however, had already made substantial sums of money by cashing in on American Capital's artificially inflated price. More importantly, the Complaint alleged that at

1

least some members of the Board knew or should have known about American Capital's inability to pay its dividends.

Although Defendants filed a motion to dismiss to the Complaint, a tentative settlement agreement was reached prior to the filing of Plaintiffs' response. The parties represent that they have engaged in confirmatory discovery and significant arbitration regarding the size of the plaintiffs' fee award.

The instant shareholder derivative litigation is related to a class action direct lawsuit initiated by eligible shareholders against members of the Board; that suit ultimately settled in 2012 for $18 million.

II.

*Factual Background*

What follows are the key components of the Proposed Settlement Agreement:

- Defendants receive a total release as to all claims that could have been brought against Defendants arising out of the same events;

- Plaintiffs' counsel will be awarded $710,000 in attorneys' fees by Defendants' insurers;

- Each of the named Plaintiffs will receive an award of $1,000;

- Defendants admit no fault;

- "Should the Board of Directors fail to be comprised of a majority of independent directors, as such term is defined at the time by the rules of the NASDAQ stock exchange," American Capital will establish a Dividend Committee, which has the following characteristics, among others:

    o Its purpose is to "provide guidance to the Board with regard to the orderly declaration of any then-ongoing dividends of the Company's securities";

    o It has the authority to make recommendations to the Board regarding the payment of dividends, modification to American Capital's current dividend policy, and the timing of public disclosures involving changes to the dividend policy;

- o   If there is a change in control of American Capital, the new Board may exercise its discretion and terminate the Dividend Committee; and

- o   In any event, the Dividend Committee may not exist longer than five years.

- Non-employee directors must, within three years of joining the Board, own American Capital common stock equal to the value of "the lesser of two times the annual cash Board retainer . . . or 5,000 shares"; and

- American Capital must provide annual training to its directors "in current best practices in corporate governance for publicly-traded corporations, with an emphasis on issues relevant to [American Capital's] industry."

The parties will publish a Notice of the Proposed Settlement in *Investor's Business Daily*. The Notice advises eligible shareholders of the existence of the case, the date of the settlement/fairness hearing, and specifies when and how any shareholder may object to the Proposed Settlement Agreement.

III.

*Procedural Background*

Having received the parties' written submission, the Court determined to hold a hearing at which it could question both parties' counsel about the specifics of the Proposed Settlement Agreement.  At the hearing, which was held on 28 March 2013, the Court ordered the parties to file a written supplement to the Proposed Settlement Agreement, setting forth: (1) information about the expertise and qualifications of counsel; (2) clarification regarding the Proposed Settlement Agreement's changes to American Capital's corporate governance structure; (3) a definition of what constitutes an "independent" director for purposes of creation of the Dividend Committee; (4) revision of the Notice so that shareholders can more easily determine the terms of the Proposed Settlement Agreement and the relationship between the shareholder derivative action and the direct action; and (5) a transcript of the Court's hearing that shareholders will be able to access and view.

The parties have submitted the requested information in their Joint Submission on Behalf of All Parties in Further Support of Motion for Preliminary Approval of Settlement (Paper No. 43). The Court has reviewed the parties' supplement and is satisfied that the parties have addressed its concerns.

## IV.

"Review of a proposed class action settlement generally involves two hearings." Manual for Complex Litigation (Fourth) § 21.632 (2004) (footnote omitted). The first is a "preliminary fairness" hearing, where the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* The second is the "fairness" hearing, where the court assesses whether the proposed settlement is "fair, reasonable, and adequate" for all class members. *Id.* § 21.634. In the present case, the Court is concerned with the first hearing.

Although the court's "essential inquiry" for both hearings is the same, *i.e.*, "whether the proposed settlement is fair, adequate, and reasonable," *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983), the court's goal at the preliminary fairness hearing is to assess whether there is "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Id.* (quoting Manual for Complex Litigation § 1.46 (5th ed. 1982)). Put differently, the court's inquiry is whether there has been a basic showing that the Proposed Settlement Agreement "is sufficiently within the range of reasonableness so that notice . . . should be given." *In re Lupron Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 139 (D. Mass. 2004).

The preliminary fairness review considers (1) the "fairness" of the settlement, and (2) the "adequacy" of the settlement. *See In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. at 1385. The "fairness" prong is concerned with the procedural propriety of the proposed settlement agreement, while the "adequacy" prong focuses on the agreement's substantive propriety.

With regard to the "fairness" element, the purpose of the inquiry is to protect against the danger of counsel – who are commonly repeat players in larger-scale litigation – from "compromising a suit for an inadequate amount for the sake of insuring a fee." *Id.* at 1383 (quoting *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315 (D. Md. 1979)). The court thus considers the following factors: whether the proposed settlement is the product of good faith bargaining at arm's length; the posture of the case at settlement; the extent and sufficiency of discovery conducted; counsel's experience with similar litigation and their relevant qualifications; and any pertinent circumstances surrounding the negotiations. *See id.* at 1383–85 (internal citations and quotations omitted); *In re Lupron Marketing and Sales Litigation*, 345 F. Supp. 2d at 137.

As to the "adequacy" prong, the court "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. at 1384 (quoting *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. at 315–16). Although the court endeavors not to try the case on its own, it remains tasked with carefully assessing the facts and applicable law to ensure that the settlement is proportionate to the strength (and weakness) of the plaintiff's case. *Id.* The court considers the following factors: "the relative strength of the plaintiffs' case on the merits," *id.* (quoting *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. at 315–16); weaknesses in the

plaintiffs' case, including proof-related obstacles or particularly strong defenses; the cost of additional litigation; defendants' ability to pay a judgment; and any opposition to the settlement. *See id.*; *In re Lupron Marketing and Sales Litigation*, 345 F. Supp. 2d at 137–38.

V.

With the foregoing principles in mind, the Court preliminarily approves the Proposed Settlement Agreement for the following reasons.

First, the Court at this stage is satisfied with the fairness of the Proposed Settlement Agreement. Most significantly, this derivative action is collateral to what was a more rigorously litigated direct action that resulted in an $18 million settlement for eligible shareholders; thus, although there was limited litigation in the present derivative action, much of the discovery and bargaining occurred in the direct action.

The Court is also satisfied with Plaintiffs' counsel. They are affiliated with well-regarded law firms with strong experience in corporate and shareholder litigation. The negotiations appear to have been appropriately adverse and at arm's length: for example, one of the key deal points – plaintiffs' attorneys' fees – was litigated before a private arbitrator, a former federal district judge, who arrived at the fee proposed in the Settlement Agreement. Taken together, these factors indicate that the Proposed Settlement Agreement is not the product of procedural impropriety.

The Court is also preliminarily satisfied with the adequacy of the Proposed Settlement Agreement. Because there was no additional discovery submitted to the Court, the only information the Court has to assess the relative merits of Plaintiffs' case and the value of continued litigation is the 60-page Consolidated Verified Shareholder Derivative Complaint and Defendants' Motion to Dismiss. The Court's review of the Complaint and the Motion to Dismiss

leads to the conclusion that, while Plaintiffs' case appeared strong, it faced a serious hurdle because Plaintiffs apparently failed to make a demand to the Board prior to filing suit or demonstrate demand futility consistent with Rule 23.1 of the Federal Rules of Civil Procedure.[1] Moreover, reliance on Defendants' representations regarding American Capital's dividend policy ultimately may not have been actionable because the representations may simply have been nothing more than projections. The Court concludes that the Proposed Settlement Agreement tracks an adequate middle path that balances the strengths and weaknesses of Plaintiffs' case, prevents further costly litigation on ambiguous legal issues, and protects shareholders from future similar conduct.

Plaintiffs' counsel maintain that they have not pursued a monetary settlement in this action because any such monies would come from the company's coffers (and effectively the shareholders' pockets), not from the Board members accused of wrongdoing. Accordingly, the settlement's primary contribution to shareholders is the creation of a Dividend Committee tasked with reviewing American Capital's dividend policy and its policy on publicizing information about its dividend policy. Although arguably Plaintiffs' counsel might have been able to secure terms with somewhat more bite, the Court, at this point, is satisfied that the Dividend Committee is at least *within the range* of what can be deemed reasonable and adequate. *See In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. at 1385. The settlement does provide additional information and oversight of American Capital's dividend practices, which is a topical response to the allegations in the Complaint.

---

[1] Rule 23.1(b)(3) requires that the complaint state with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members" and "the reasons for not obtaining the action or not making the effort." The pleading standard "for excusing demand is defined in a federal derivative action by the law of the State of incorporation," *Weinberg v. Gold*, 838 F. Supp. 2d, 355, 357 (D. Md. 2012), which, in this case, is Delaware. Plaintiffs were, therefore, required to have plead with sufficient particularity facts that (1) the directors were disinterested and independent, or (2) that the challenged transaction was not the product of a valid exercise of business judgment. *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).

\* \* \*

Because the Court finds the Proposed Settlement Agreement to be within the range of reasonableness and appears to be adequate, the Motion for Preliminary Approval of Derivative Settlement (Paper No. 38) is **GRANTED**.

        /s/
PETER J. MESSITTE
June 26, 2013                      UNITED STATES DISTRICT JUDGE